Wilbert SCHNEIDER and Virginia
Schneider, his wife,
Plaintiffs-Respondents,

v.

Ronald James FINLEY,
Defendant-Appellant.

No. 37779.

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 5, 1977.

Buerkle, Buerkle & Lowes, Albert C. Lowes, David G. Beeson, Jackson, for defendant-appellant.

Roberts & Roberts, V. Kenneth Rohrer, Farmington, for plaintiffs-respondents.

McMILLIAN, Presiding Judge.

Defendant appeals from a judgment entered on a jury's verdict in the sum of $8,002 in favor of plaintiffs Wilbert and Virginia Schneider, husband and wife. The jury awarded both plaintiffs the sum of $4,000 each for their personal injuries and $1.00 each for their loss of consortium.

For reversal defendant urges that the trial court erred: (1) in failing to sustain his motion for a directed verdict because there was no evidence to support a disjunctive submission of failure to keep a careful lookout or of driving his automobile at an excessive rate of speed; (2) in failing to set aside verdicts; (3) in permitting hearsay testimony pertaining to reaction time and stopping distance which an automobile would travel at varying rates of speed; (4) in failing to exclude from evidence certain medical bills because of a failure to disclose; (5) in permitting plaintiffs' counsel to conduct an improper voir dire examination; (6) in failing to grant a mistrial because of a volunteered statement about insurance; (7) by improperly circumventing defendants

cross-examination of plaintiff—(a) concerning certain medical bills; and (b) concerning her claim for loss of consortium; (8) by allowing into evidence irrelevant testimony relative to defendant's sale of a racing car; (9) by allowing plaintiffs' counsel to make three improper jury arguments. For reasons hereinafter noted, we reject each contention urged by appellant, and, accordingly, we affirm the judgment.

■ At the outset, we note that in determining whether plaintiffs made a submissible case defendant's failing to keep a careful lookout or operating his vehicle at an excessive rate of speed we are commanded to review the evidence from a favorable standpoint to the plaintiffs, giving the plaintiffs the benefit of any of defendant's evidence favorable to plaintiffs, giving plaintiffs the benefit of all reasonable inferences from all the evidence, and to disregard defendant's unfavorable evidence. *Stradford v. Bluefeather*, 384 S.W.2d 541, 542 (Mo.1964).

On September 5, 1973, plaintiff Virginia Schneider, accompanied by her husband, plaintiff Wilbert Schneider, as a front seat passenger, drove and operated their green 1968 Buick northwardly on Highway 67. Highway 67 at this juncture is a four lane north and southbound highway divided by a forty foot grassy, median strip with two lanes in each direction. Each lane is approximately 12 feet wide and on the east and west side of the highway is a 10 foot shoulder. At the point of the accident there is a forty foot long east-west crossover located between the north and southbound lanes that exits into a Standard service station located on the west or left side of the highway. When Virginia was about 1000 to 1500 feet south of the crossover, Wilbert suggested that they stop at the Standard service station to check the tires. In compliance with her husband's request, Virginia checked her side and top rear view mirror, put on her left turn blinker signal and moved from the right (outside) lane into the inside (left) lane. During this maneuver, the evidence showed that Virginia was traveling 50 to 60 miles per hour. At

all times up to and after impact, Virginia kept her left turn signal on. She testified that she saw both defendant's and witness Flotow's pickup truck in her rear view and side mirrors; and that when she was about 300 feet south of the crossover, she had reduced her speed to about 15 to 20 miles per hour.

Danny Flotow, whose pickup truck was immediately to the rear (south) of the plaintiffs' vehicle and traveling in the inside northbound lane, testified that when plaintiffs' vehicle was about 300 feet south of the crossover, his vehicle was separated from plaintiffs' vehicle by two city blocks which he estimated to be about 600 feet. While his vehicle and plaintiffs' vehicle were in this posture, he fixed the position of defendant's pickup truck to be 1000 to 1500 feet south of the crossover. Thus approximately between 700 to 1200 feet from plaintiffs' automobile which was 300 feet south of the crossover and 400 to 900 feet behind the Flotow pickup truck. Flotow's speed was 60–65 miles per hour. When Flotow noticed the continuous slowing of plaintiffs' automobile and plaintiffs' intention to cross over to the left at the service station exit, he began to apply his brakes and to move to the outside lane passing the plaintiffs' vehicle. Flotow testified that defendant had somewhat closed the distance behind him and estimated the distance between the rear of his automobile and defendant's to be two to three car lengths and that defendant was traveling at 65 to 70 miles per hour. Flotow continued on through the intersection and saw the collision in his left rear view mirror. The left front of defendant's truck collided with the right rear part of plaintiffs' automobile.

Plaintiffs' vehicle was knocked through the crossover and stopped in the median to the north. It left 76 feet of skidmarks starting at the south edge of the crossover and moved through the crossover off the north edge of the crossover and into the median. Defendant's truck stopped partially straddling the center line of the northbound lanes, north of the crossover, parallel to plaintiffs' automobile and headed somewhat in a northeasterly direction.

Defendant testified that plaintiffs' automobile was in its turn and was partially in the crossover and the inside northbound lane of Highway 67 at the moment of impact; that he first saw plaintiffs' automobile when the Flotow pickup truck moved to the outside (east) lane and that he was approximately 45 to 60 feet away; that he was traveling 50 to 60 miles per hour; that he had driven over the road before and was aware of the presence of the crossover. On the day of the accident, the road was wet, and it was daylight and somewhat misting.

Defendant is quite correct when he says that each element of a disjunctive verdict directing instruction must be supported by substantial evidence and that the lack of such support on any one element renders the submission erroneous. *Saupe v. Kertz*, 523 S.W.2d 826, 830 (Mo. banc 1975); *Wolfe v. Harms*, 413 S.W.2d 204, 210 (Mo. 1967). Additionally, defendant is correct when he states that in order to submit an instruction based on either failure to keep a careful lookout or driving at an excessive speed not only must the alleged negligent acts have been committed by the defendant, but also the alleged acts must have been the proximate cause of the collision. *Marshall v. Bobbitt*, 482 S.W.2d 439, 442 (Mo. 1972). Stated another way, in an excessive speed case the test is whether the speed prevented the driver from avoiding the accident. Or in a case involving failure to keep a careful lookout, the inquiry is whether in the exercise of the highest degree of care the driver of the defendant's vehicle could have seen the other vehicle in time to have taken effective precautionary action so as to avoid the accident.

Using the above two tests, we examine first the allegation pertaining to failure to keep a careful lookout. In our view, we find that a jury could have reasonably found that when the plaintiffs' automobile was 300 feet to the south of the crossover with her left turn signal blinking, she saw to the rear of her automobile both the Flotow pickup camper and the defendant's pickup truck. Consequently, it is reasonable to conclude that defendant in the exercise of the highest degree of care could have seen plaintiffs' automobile. At this juncture based upon Mr. Flotow's testimony defendant was 1000 to 1500 feet south of the crossover, and at least 700 to 1200 feet from the rear of plaintiffs' automobile and was traveling at the rate of 50 to 60 miles per hour. Plaintiff Mrs. Schneider, who was operating their vehicle at 40 to 50 miles an hour, reduced her speed within the 300 feet distance to the south edge of the crossover to 15 to 20 miles per hour. The evidence shows that impact was a near miss, i. e., the left front of defendant's vehicle came into contact with the right rear of plaintiffs' automobile. So, if defendant had kept a careful lookout, he would have observed: (1) the Flotow pickup truck and plaintiffs' automobile; and (2) that both were slowing down and that plaintiffs' automobile had on its left hand turn signal. Consequently, defendant by slightly reducing his speed when he was 700–1200 feet away from the crossover would have permitted plaintiff in a small fraction of a second to move to a position of safety inasmuch as plaintiffs' vehicle (18 feet long) at the time of impact was moving from 22.5 to 30 feet per second. Especially since defendant himself testified that at the time of impact plaintiffs' automobile was in its turn and partially in the crossover and the inside (left) lane of Highway 67.

We are aware that there are cases as cited by defendant that hold for a party to make out a failure to keep a careful lookout he must have evidence in time or distance when the defendant could have seen the other party or what defendant's braking distance was at a given speed. *Heberer v. Duncan*, 449 S.W.2d 561 (Mo. banc 1970). On the other hand, there are some cases because of the factual situation where evidence of time and distance are not required. *Williams v. Christian*, 520 S.W.2d 139, 144 (Mo.App.1974) citing *McWilliams v. Wright*, 460 S.W.2d 699, 702 (Mo.1970).

In *Highfill v. Brown*, 340 S.W.2d 656, 664 (Mo. banc 1960), the court affirmed a contributory negligence instruction where the defendant in preparation to make a left

turn in front of plaintiff, who was proceeding in the same direction, slowed his vehicle from 50 miles per hour to 20 miles per hour, 200 to 300 feet from the turn, moved to the center line, signaled a left turn 100 feet away from the drive, at the time defendant began to signal his intention to make a left turn, plaintiff's automobile was traveling 50 miles per hour and was 250 to 300 feet to the rear of defendant's automobile. In affirming the decision, the court observed that it would take judicial notice that an automobile may be sufficiently slowed or stopped within certain limits as set forth in the above factual situation. See also *Nelms v. Bright*, 299 S.W.2d 483, 490 (Mo. banc 1957) (Submission for failure to stop or slacken speed, affirmed where defendant traveling 40 to 50 miles per hour was more than 550 feet from plaintiff.) *McCarthy v. Wulff*, 452 S.W.2d 164, 168, 169 (Mo.1970) (Vehicle traveling 45 to 50 miles an hour could be stopped within 350 to 400 feet.) Accordingly, we hold that plaintiffs made a submissible case on the issue of failure to keep a careful lookout, and its resolution was a jury question.

■ Next, we consider the disjunction submission on excessive speed. Defendant points out to us that at all times before and at the moment of impact he was observing the posted speed limit. Granted, but operating a motor vehicle at a speed which endangers persons or properties may be negligent even though such speed is within the posted speed limit, *Rakestraw v. Norris*, 478 S.W.2d 409, 415 (Mo.App.1972). Moreover, whether a particular speed is high, dangerous, or excessive depends on the conditions of the highway and surrounding circumstances. *Dorrell v. Moore*, 504 S.W.2d 174, 178 (Mo.App.1973). To make a case on excessive speed evidence may be direct or circumstantial. *Russell v. Kotsch*, 336 S.W.2d 405, 409 (Mo.1960). Without unduly lengthening this opinion, we will not repeat the physical evidentiary facts that we set out at length on the issue of failure to keep a lookout. Failure to keep a careful lookout and excessive speed is somewhat interrelated. In our opinion, there was evidence in the record that indicated that de-

fendant had traveled this road before and was aware of the crossover and had he kept a careful lookout he could have reduced his speed after sensing the danger from the fact that the two vehicles ahead were slowing down and that plaintiffs' left hand turn signal was blinking; and if he had done so and had been traveling at a reasonable rate of speed defendant could have applied his brakes sooner than he did so as to reduce his speed, thereby giving plaintiffs' vehicle within a fraction of a second to escape the path of defendant's pickup truck. Thus, we find this contention against the defendant.

■ Defendant's second contention questions the amount of the verdicts, urging that neither bears any reasonable relationship to the actual damages. In support of defendant's argument, he refers us to numerous cases that merely recite general rules. Here each plaintiff incurred medical bills of almost $2000 each as a result of hers and his injuries. Both were hospitalized for 13 days and Dr. Hawk testified that their injuries were a result of the accident and that the accident worsened their pre-existing arthritic conditions. We find this contention against defendant.

■ In his next point defendant argues that the court erred by permitting Trooper Vilt to testify concerning reaction time and the distance traveled during such reaction time. Assuming, without deciding, that the court was in error in permitting this testimony because Trooper Vilt's testimony was based upon what he had read in a driver's guide and what had been told to him by others during a training course, we reject defendant's contention because the court even without the trooper's testimony, takes judicial notice that three-fourths of a second is the normal reaction time, unless a longer time affirmatively appears in the proof. *Koogler v. Mound City Cab Co.*, 349 S.W.2d 233, 237 (Mo.1961); *Joggerst v. O'Toole*, 513 S.W.2d 722, 725 (Mo.App.1974). Therefore, once defendant's speed is established, as in the instant case, it is purely a mechanical process to determine how far in feet defendant's pickup truck traveled dur-

ing the three-fourths of a second reaction time. We find no prejudice in this regard and find this point against defendant.

■ For his fourth point, defendant argues prejudicial error in the admission of plaintiffs' medical bills and other related bills because of plaintiffs' failure to keep their promise to furnish him copies of the sought after bills. While we feel that plaintiffs should have honored their promise, there was evidence that plaintiffs did not obtain the sought after bills until just before trial. Moreover, defendant concedes that the major bills, i. e., the hospital bills and Dr. Hawk's bills, were not a part of his request. Thus, it boils down to Dr. Miller's bills, Bonne Terre Hospital and ambulance bills which totaled $324.26 for Mr. Schneider and $201.88 for Mrs. Schneider. If the test is that it is within the trial court's discretion to admit or refuse testimony or evidence not previously revealed by formal discovery, see *Fitzpatrick v. St. Louis-San Francisco Ry. Co.*, 300 S.W.2d 490, 500 (Mo. 1957) and *Aulgur v. Zylich*, 390 S.W.2d 553, 556 (Mo.App.1965), then we find no abuse of discretion that would warrant us to condemn the trial court of error.

■ Defendant claims that the court improperly permitted counsel for the plaintiff to inquire of jurors their views on loss of consortium. While we condemn any question that seeks to commit the jury in advance about their views to either party's theory of recovery or defense, no purpose will be served in this case by a long discussion because on the issue of loss of consortium, each plaintiff recovered only the sum of $1.00. Therefore, the error, if any, was harmless.

During the cross-examination of witness Flotow, defendant's counsel asked the witness whether he remembered giving a statement to a Mr. Ray Thompson. Mr. Flotow, before answering, sought to identify Mr. Thompson by asking, "Was that an insurance agent?" No objection was made. After several unrelated questions and a side bar discussion pertaining to other matters, defendant's attorney asked for a mistrial because of Mr. Flotow's earlier reference to

insurance. The court denied the request for a mistrial, stating that the reference to insurance was invited. On redirect examination, plaintiffs' attorney inquired of Mr. Flotow whether Mr. Thompson was present in the courtroom. Mr. Flotow asked, "The insurance agent?" Plaintiffs' attorney replied, "The fellow that took the statement." Once again defendant's request for a mistrial was denied. After a lengthy side bar discussion, once again Mr. Flotow was asked if he saw Mr. Thompson in the courtroom. Mr. Flotow again inquired, "Was he the insurance agent?" The court denied defendant's request for a mistrial, and instructed the witness not to use the word "insurance agent" any more.

■ In defendant's motion for a new trial he deals only with the first occurrence and makes no reference whatsoever to the second incident that occurred on redirect examination. Now on appeal, defendant seeks to have us review the second incident. We refuse to review the second incident now complained of because it would be unfair to the trial court because the defendant, in his motion for a new trial, never gave the trial court an opportunity to consider the allegation of error now asserted. See *Rotert v. Peabody Coal Co.*, 513 S.W.2d 667, 676 (Mo.App.1974); also Rule 84.13, V.A.M.R. Consequently, because this point was not properly preserved for review, it will not be considered.

We have examined the transcript, the briefs, and carefully considered the other allegations of error alleged by defendant and find them too devoid of merit. Moreover, none of the other allegations of error, even if found material, affected the merit of the action, Rule 84.13(b). Accordingly, the judgment is affirmed.

STEWART and REINHARD, JJ., concur.