George LEONARD and Jerry M. Leonard, Plaintiffs-Respondents,

v.

GORDON'S TRANSPORT, INC., a corporation, and Orville Gene Augustin and Rafig Ahmed Mughal and Sanford J. Gubernik, Defendants-Appellants.

Nos. 39291, 39292 and 39293.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 21, 1978.

Robert C. Ely, Ely & Wieland, St. Louis, for defendants-appellants.

Joseph A. Fenlon, Steiner & Fenlon, Clayton, James E. Godfrey, Heege & Heege, Clayton, for plaintiffs-respondents.

WEIER, Judge.

In this lawsuit arising out of a collision on Interstate Highway 270 involving four cars, a jury returned a verdict against all four defendants and in favor of plaintiff Jerry Leonard in the sum of $25,000 and in favor of plaintiff George Leonard in the sum of $8,000. The trial court entered judgment in accordance with the jury verdict and later overruled all motions for judgment notwithstanding the verdict and for new trial. All four defendants appealed but the dispute between plaintiffs and the two defendants, Gubernik and Mughal, was

settled as a result of an appellate settlement conference. The appeal of defendants Gordon's Transport, Inc., and Augustin remains. Gordon's owned the car driven by Augustin, who at the time of the accident was in the course of his employment with Gordon's.

These two remaining defendants contend their motion for directed verdict should have been sustained because there was insufficient evidence that they were negligent. They also claim error in the giving of two verdict-directing instructions. These points center around Augustin's alleged failure to keep a careful lookout and his alleged violation of a statute prohibiting driving in the left-hand lane when not passing other vehicles. We affirm.

The evidence indicates, and all parties agree, that plaintiffs were in no way at fault in causing this accident. On June 25, 1974, the car in which plaintiffs were riding was proceeding south on Highway I–270 (then I–244) near Olive Street Road when it was struck head on by the car driven by Augustin. At this point Highway 270 was a six-lane highway with three lanes north bound and three lanes south bound separated by a median strip. Augustin had been driving north in the inside left lane of the highway when his automobile came into collision with a car driven by Mughal (which may or may not have been hit by a car driven by Gubernik) causing the Augustin car to go across the grassy median and into the front of plaintiffs' south-bound car. Plaintiffs had no time to avoid the collision.

When the collision occurred at about three o'clock in the afternoon, traffic was described as "fairly heavy," "pretty crowded," "moderate, normal," "normal," and "a little heavier than normal." David Gene Buehrer, not involved in the collision, witnessed the events leading up to the accident. He was traveling north in the inside left lane of the north-bound lanes when he observed a gold colored sports car (a Mercedes driven by Gubernik) come up behind him. Buehrer moved his car over to the center north-bound lane and Gubernik's car passed him on his left. Gubernik then moved his car to the center lane in front of Buehrer and speeded up to pass a tan car (driven by Augustin), which was traveling in the inside left lane. A light blue station wagon (driven by Mughal) was ahead of Gubernik's car in the center lane. Mughal had passed Augustin on Augustin's right a short time before just south of the Olive Street Road overpass. When Mughal passed Augustin, Augustin was going between fifty and fifty-five miles per hour and Mughal was going about five miles per hour faster. As the distance between Gubernik's car and Mughal's car closed, Gubernik attempted to move into the inside left lane again to pass the blue car. In so doing, he attempted to pull in front of the tan car. The instant that the gold colored car attempted to move in front of the tan car, the blue car skidded out of control into the extreme left lane. Mughal admitted he slowed his car from fifty miles an hour to fifteen or twenty miles an hour in a very short distance. He did this because in his words "at a distance [ahead] all the traffic was almost blocked and stopped." Continuing, he related that Gubernik's car, "somehow got through [between Mughal's blue car and Augustin's tan car] but I could not see how he went to get through there because the tan car at the same time collided with the blue sedan." Gubernik's car struck Mughal's car or came close to hitting it. Gubernik then drove onto the grassy median and eventually stopped his car. The right front fender of Augustin's car struck the left front fender of Mughal's car. Then Augustin's car crossed the median and struck plaintiff's car head on. As soon as Augustin's car hit Mughal's car, Augustin was knocked unconscious. Buehrer estimated the speed of both Augustin's and Mughal's cars right before the accident to be fifty miles an hour, and the speed of Gubernik's car to be fifty-five to sixty miles an hour.

Buehrer said there was only about one car length between Augustin's car and Mughal's car when Gubernik's car went between them and that Augustin did not have time to avoid the collision with Mughal. However, Gubernik said that when he first

noticed Mughal's car it was ten to fifteen car lengths ahead of him; that when he started to move into the inside left lane, Mughal was about ten car lengths ahead of him and Augustin was thirteen to fifteen car lengths behind Mughal and three or four car lengths behind Gubernik. Gubernik then saw Mughal slam on his brakes ("I saw the tires smoking and the car go into a slide") and come into the extreme left lane forcing Gubernik off the road and onto the median. In addition Mughal testified his car was hit twice and that the time between the first impact with Gubernik and the second impact with Augustin was "close to two seconds" or "a few" seconds. Augustin said he never saw Gubernik's gold colored car at any time. He also testified: "I didn't see the blue station wagon until he come in front of me directly across the path of my car."

As Gubernik moved from the center lane to the inside north-bound lane, he "had observed some construction work being done in the right-hand lane towards the Page exit and a back-up of traffic on 244." At that time he "observed the blue station wagon more or less making a panic stop to avoid this traffic tie-up that was imminently ahead." "All I could really see was it looked like one of these big flashing arrows pointing to the left that they put on top of a truck or something like that." Mughal said he saw "almost a traffic block" but it was only "later on" that he saw what was blocking traffic. Buehrer saw road construction and people working on the shoulder after he had left the accident but he did not see it before the accident. Augustin said he never saw any evidence of any construction work. The accident took place one hundred to one hundred and fifty feet north of the Olive Street Road overpass. The truck with the flashing arrow was about a half mile or more north of the overpass ahead of the defendants at the time of the accident.

With respect to the two remaining defendants, plaintiffs' two identical verdict-directing instructions hypothesized that defendants Gordon's Transport, Inc., and Augustin either "failed to keep a careful look-

out, or operated their automobile in the left-hand lane of traffic when they were not overtaking and passing other vehicles . . . ."

Defendants Gordon's and Augustin first contend the trial court erred in overruling their motion for a directed verdict at the close of all the evidence because the evidence was insufficient to permit a finding that these defendants were negligent in any respect. In particular, defendants submit that there was no evidence from which the jury could reasonably find that Augustin was negligent in failing to keep a careful lookout or that this alleged omission was a proximate cause of the collision (i. e. that Augustin could not have avoided the accident had he been looking). Defendants also contend the trial court erred in giving the verdict-directing instructions because the submission of failure to keep a careful lookout was not supported by substantial evidence of negligence or causation. We consider these points together.

In determining whether plaintiffs made a submissible case of negligence of failure to keep a careful lookout, we review the evidence from a favorable standpoint to plaintiffs, "giving the plaintiffs the benefit of any of defendant's evidence favorable to plaintiffs, giving plaintiffs the benefit of all reasonable inferences from all the evidence, and [disregarding] defendant's unfavorable evidence." *Schneider v. Finley,* 553 S.W.2d 727, 729[1] (Mo.App.1977). Concerning the giving of the instructions, each element of a disjunctive verdict-directing instruction, such as these, must be supported by substantial evidence and the lack of support on any one element renders the submission erroneous. *Schneider v. Finley, supra* at 730[2]. In determining whether this element of failure to keep a careful lookout was so supported, we again consider the evidence favorably to plaintiff. *Butler v. Hicks,* 554 S.W.2d 449, 450 (Mo.App.1977). Defendants are correct when they say that in order to make a submissible case of negligence on failure to keep a careful lookout (and to give an instruction submitting the

same) "not only must the alleged negligent [act] have been committed by the defendant, but also the alleged [act] must have been the proximate cause of the collision." *Schneider v. Finley, supra* at 730[3].

There was much evidence in this case that Augustin was not keeping a careful lookout. He never saw Gubernik's gold Mercedes even though it cut right in front of him. He never saw any lanes ahead clear or blocked with other vehicles, even though Gubernik and Mughal saw the slowed or stopped traffic ahead. And he did not see Mughal's blue station wagon after it passed him until it was directly in front of him. There was also sufficient evidence that Augustin could have avoided hitting Mughal's car (and hence plaintiffs' car) had he been keeping a careful lookout. Gubernik said Augustin was three or four car lengths behind his car and thirteen to fifteen car lengths behind Mughal when Gubernik started moving in front of Augustin and Mughal slammed on his brakes. Mughal said two or "a few" seconds elapsed between the impact from Gubernik's car and the impact from Augustin's car. The right front fender of Augustin's car struck the left front fender of Mughal's car. There was evidence that Gubernik was ahead of Augustin and that he had time to veer to the left of Mughal without hitting him. From all this evidence the jury could reasonably find that had Augustin seen the traffic tie-up, Gubernik's car cutting in front of him, or Mughal's car slowing very quickly or moving to the left, that he could have had time to swerve off the road to the left and onto the median and avoid hitting Mughal. *See, Butcher v. Main*, 426 S.W.2d 356, 361[12] (Mo.1968); *Schneider v. Finley, supra* at 730–31[6]. Because plaintiffs made a submissible case on this ground of negligence, the trial court properly overruled defendants' motion for a directed verdict. *Boyle v. Colonial Life Insurance Company of America*, 525 S.W.2d 811, 815[7] (Mo.App.1975); *Bowers v. Columbia Terminals Co.*, 213 S.W.2d 663, 667[2] (Mo.App. 1948). We do not at this point discuss plaintiffs' second theory of negligence, which is that Augustin was driving in the left-hand lane when not overtaking and passing other vehicles. The verdict-directing instructions were not improperly given on the theory that the element of failure to keep a careful lookout was not supported by substantial evidence.

■ The other issue in this case is whether the same instructions were improperly given either on the theory that the element of driving in the extreme left-hand lane of traffic when not overtaking and passing other vehicles was an incomplete submission of the findings necessary for a jury to hold that these defendants were negligent in this respect or on the theory that this element of the verdict directors was not supported by substantial evidence.

The "rules of the road" applicable (§ 304.-014 et seq. RSMo. 1969) are in words and figures as follows.

§ 304.015(2) RSMo. 1969:

"2. Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

(2) When placing a vehicle in position for and when such vehicle is lawfully making a left turn in compliance with the provisions of sections 304.014 to 304.026 or traffic regulations thereunder or of municipalities;

(3) When the right half of a roadway is closed to traffic while under construction or repair;

(4) Upon a roadway designated by local ordinance as a one-way street and marked or signed for one-way traffic."

§ 304.015(4) RSMo. 1969:

"4. The authorities in charge of any highway or the state highway patrol may erect signs temporarily designating lanes to be used by traffic moving in a particular direction, regardless of the center line of the highway, and all members of the Missouri highway patrol and other peace officers may direct traffic in conformance

with such signs. When authorized signs have been erected designating off-center traffic lanes, no person shall disobey the instructions given by such signs."

§ 304.015(6) Supp. 1971:

"6. All vehicles in motion upon a highway having two or more lanes of traffic proceeding in the same direction shall be driven in the right-hand lane except when overtaking and passing another vehicle or when preparing to make a proper left turn or when otherwise directed by traffic markings, signs or signals."

Defendants submit that this element of the instructions should have submitted not only the exception of overtaking and passing other vehicles, but also the exceptions listed in § 304.015(2)(3) (right half of roadway closed while under construction or repair) and § 304.015(4) (signs erected by proper authorities) because of the road work and the truck with the flashing arrow. But the evidence shows that Augustin had been driving in the inside left lane south of the Olive Street Road overpass when Mughal passed him on his right; that the construction and sign were a half mile or more north of the Olive Street Road overpass; that this overpass is the first point from which the construction and sign were visible; that the accident occurred just one hundred to one hundred and fifty feet north of this overpass; and that Augustin, by his own admission, never saw any construction work. These exceptions were inapplicable and the trial court did not err in not including them in this element of the instructions. *Cf. Rooney v. Lloyd Metal Products Company,* 458 S.W.2d 561, 568 (Mo.1970); *Miles v. Gaddy,* 357 S.W.2d 897, 901–2 (Mo.banc 1962).

■ Although not raised by the parties, we believe some reference should be made to a rule of law applicable to vehicles on divided highways before the enactment of § 304.015(6), Supp.1971, *supra.* We refer to the precept enunciated in *Witherspoon v. Guttierez,* 327 S.W.2d 874, 878 (Mo.1959). "Vehicles traveling upon a double-lane, one-way highway ordinarily have a right to use either half of the double lane." (Followed in *Gaynor v. Horwitz,* 464 S.W.2d 537, 538[3] (Mo.App.1971)). This statement of the law was based upon the then-effective statute § 304.020, Laws 1953, p. 587. In 1971, by amendment (Supp.1971), this "rule of the road" was changed in part and incorporated in § 304.015(2) as it appears above. Subsection 6, *supra,* was then added and specifically required vehicles on divided highways to be driven in the right-hand lane with certain exceptions noted. Violation of this traffic regulation under certain circumstances may be negligence per se. Regulations, such as this, however, are not unyielding and inflexible and are not to be applied rigidly, absolutely and peremptorily without regard to circumstances or conditions there existing. Duties imposed by some of the "rules of the road" may be qualified by circumstances, such as considerations of safety, emergency conditions or impossibility. Deviation from the statutory standard in such circumstances will not be considered negligence per se. *Lincoln v. Railway Express Agency, Inc.,* 359 S.W.2d 759, 765[5] (Mo.1962).

Here there was evidence that Augustin violated § 304.015(6) Supp.1971, by driving in the extreme left lane at a time when he was not passing another vehicle and at a slower rate of speed than either Mughal or Gubernik, both of whom passed Augustin on his right. The verdict-directing instructions, in simple terms following the statute, required the jury to find not only that Augustin violated this statute but that this violation constituted negligence. Defendant's contention that there was insufficient evidence upon which to submit his failure to drive in the right-hand lane is denied.

Defendants further contend that even if Augustin was negligent in violating the statute, there was no evidence to show that this negligence was a proximate cause of the collision. The general principles applicable to this question are set forth in the often quoted case of *Floyd v. St. Louis Public Service Company,* 280 S.W.2d 74, 78[8–10] (Mo.1955) as follows: "Generally, it is sufficient to constitute proximate cause that the negligence charged was the effi-

**250**

cient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant. The negligence of the defendant need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted. A party is held liable if his negligence, combined with the negligence of others, results in injury to another." It is reasonable to infer from the evidence that by traveling in the inner left lane more slowly than Mughal and Gubernik, Augustin not only caused those drivers to pass him on his right but he also caused Gubernik to follow a path which brought him into collision with the rear of Mughal's car, thereby causing Mughal to enter the lane in front of Augustin. In other words it is reasonable to infer that if Augustin had been driving in the right-hand lane in obedience to the statute and out of the way of faster moving traffic the accident would not have occurred. Driving in the left lane under the facts presented here could be found to constitute the proximate cause which set in motion the chain of circumstances leading up to the injuries of the plaintiffs. *Thebeau v. Thebeau*, 324 S.W.2d 674, 678 (Mo.banc 1959).

The judgment is affirmed.

GUNN, P. J., and KELLY, J., concur.