Kenneth BRANIECKI, Jr.,
Plaintiff/Appellant,

v.

MOUND CITY YELLOW CAB COMPA-
NY, INC., Defendant/Respondent.

No. 62717.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 3, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 8, 1993.

Application to Transfer Denied
Oct. 26, 1993.

Marc Steven Wallis, Newman & Bronson, St. Louis, for plaintiff/appellant.

Thomas J. Casey, Jonathan E. Fortman, Casey & Meyerkord, St. Louis, for defendant/respondent.

CRANE, Judge.

This suit arose from a collision at an intersection in the City of St. Louis between a pickup truck driven by plaintiff, Kenneth Braniecki, Jr., and a cab driven by a driver for defendant, Mound City Yellow Cab Company, Inc. Plaintiff sought damages for per-

sonal injuries and property damage. The jury awarded plaintiff $23,450 in damages and assessed fifty percent fault to plaintiff and fifty percent fault to defendant. The trial court entered judgment for plaintiff for $11,725. Plaintiff appeals from this judgment, asserting error in the submission of a comparative fault instruction on excessive speed. We affirm.

This action arises from an automobile collision which occurred at 5:35 p.m. on October 30, 1989, a weekday, at the intersection of Lindell Boulevard and Newstead Avenue in the City of St. Louis. The roads were wet due to rain following a storm. The street lights were on due to darkness. The cab driver, with a passenger in the rear seat, was westbound on Lindell with his windshield wipers and headlights on. The traffic light at the intersection of Lindell and Newstead was green. There was no left turn arrow at this intersection; traffic was allowed to make left turns on a green light. The cab driver stopped in the left lane on Lindell at Newstead to allow eastbound traffic to pass before making a left turn across Lindell on to southbound Newstead. He activated his left turn signal. The cab driver had a clear view of the center lane of eastbound Lindell traffic, which was the only moving lane of eastbound traffic. When the last eastbound vehicle passed through the intersection, he proceeded to make his turn at approximately five to ten miles per hour. He did not see any other cars moving in the center eastbound lane during his turn and did not see plaintiff's vehicle at any time prior to impact. His passenger did not see plaintiff's vehicle until immediately before impact.

Plaintiff testified he was driving twenty-five miles per hour, with his windshield wipers and headlights on, in the center eastbound lane of Lindell. He testified the light was solid green as he approached the intersection at Newstead which was busy with rush hour traffic. He was familiar with the intersection and knew that Lindell traffic could make left turns on a green light. He also knew that both eastbound and westbound Lindell traffic had a simultaneous green light at Newstead. Three or four cars were waiting to make left turns in the left eastbound lane. Parked cars occupied the right eastbound lane. Plaintiff testified that he entered the intersection at twenty-five miles per hour. He first saw defendant's cab when it was turning across his lane. At that time he was one car length from the intersection. The cab was twenty-five feet from plaintiff. Plaintiff put on his brakes, but was unable to stop.

At the time of impact, the cab had completed its turn, was facing south on Newstead, and had almost cleared the intersection. The right front of plaintiff's truck hit defendant's cab on the right rear quarter panel, behind the wheelwell. The heavy impact propelled the cab into a car stopped at the red light on Newstead. Both vehicles were damaged in the collision and the cab's passenger and plaintiff were both injured.

For his sole point on appeal, plaintiff asserts the trial court erred in submitting a comparative fault instruction based on excessive speed. Plaintiff argues that the instruction was not supported by the evidence because he testified that he approached the intersection at ten miles per hour less than the thirty-five miles per hour speed limit, the light was green, and he did not see defendant's vehicle making a left turn in front of him until it was twenty-five feet away.

Instruction No. 10, submitting comparative fault on the issue of excessive speed, read as follows:

In your verdict you must assess a percentage of fault to plaintiff whether or not defendant was partly at fault if you believe:

First, Plaintiff Kenneth E. Braniecki, Jr. drove at an excessive speed, and

Second, Plaintiff Kenneth E. Braniecki, Jr. was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

Plaintiff objected to the instruction. The trial court overruled the objection stating that there was evidence that plaintiff could have been using excessive speed in existing circumstances.

■ An instruction must be supported by substantial evidence. *Elfrink v. Burlington Northern R.R.*, 845 S.W.2d 607, 611 (Mo. App.1992). Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can reasonably decide the case. *Id.* On review of the submission of an instruction, we view the evidence and inferences therefrom in the light most favorable to the instruction and disregard any contrary evidence. *Elfrink,* 845 S.W.2d at 611.

■ An excessive speed instruction is proper where the record indicates that a party was driving at a speed which, under the circumstances, prevented the party from avoiding a collision. *Knox v. Simmons,* 838 S.W.2d 21, 24 (Mo.App.1992). The test is whether the speed prevented the driver from avoiding the accident. *Schneider v. Finley,* 553 S.W.2d 727, 730 (Mo.App.1977). The evidence must support a finding that 1) plaintiff was driving at an excessive speed and 2) such speed was a directly contributing cause of the collision. *Roper v. Archibald,* 680 S.W.2d 743, 748 (Mo.App.1984). Evidence supporting an excessive speed instruction may be direct or circumstantial. *Schneider,* 553 S.W.2d at 731.

■ Plaintiff argues that he was travelling ten miles per hour less than the posted speed limit. Plaintiff also argues that he had a green light. However, a motorist who drives at a speed which endangers persons and property under the existing conditions may still be negligent even though the motorist's speed is within the posted speed limit. *Schneider,* 553 S.W.2d at 731; *Calvert v. Super Propane Corp.,* 400 S.W.2d 133, 139 (Mo.1966). Furthermore, a motorist is not entitled to rely solely on a favorable signal; the duty of care to be exercised remains commensurate with the circumstances, one of which is the green light. *Reynolds v. Consolidated Cabs, Inc.,* 374 S.W.2d 955, 959 (Mo.App.1964); *Roberts v. Wilson,* 225 Mo. App. 932, 33 S.W.2d 169, 172 (Mo.App.1930). Further, at this intersection, left turns were permitted on a green light. Thus, the possibility of an oncoming vehicle making a left turn was a circumstance to be considered.

Whether a particular speed is high, dangerous, or excessive depends on the conditions of the highway and surrounding circumstances. *Schneider,* 553 S.W.2d at 731; *Calvert,* 400 S.W.2d at 139. *See also Howland v. West,* 507 S.W.2d 345, 348 (Mo.1974). Particular conditions and circumstances relevant to determining whether speed is excessive include the amount of traffic and road and weather conditions. Thus, a speed within the posted speed limit may be excessive when maintained on an arterial road, during rush hour, on wet streets, during rain showers at night. *See Rakestraw v. Norris,* 478 S.W.2d 409, 416 (Mo.App.1972); *see also Hill v. Boling,* 523 S.W.2d 867, 872–73 (Mo.App.1975). Although heavy destructive impact in itself is not proof of negligently high speed, it may indicate negligent high speed when combined with other circumstances. *Rakestraw,* 478 S.W.2d at 416.

In this case, the accident occurred at dark, during rush hour, at a busy intersection, and on a wet road during a moderate rain. The light was green and oncoming traffic was permitted to turn left. The line of eastbound vehicles waiting to make a left turn could be an obstacle to an eastbound motorist's view of westbound traffic at the intersection. These circumstances governed plaintiff's duty of care in approaching the intersection. Plaintiff had a duty to approach the intersection at a sufficiently reduced speed so that he could control his vehicle and avoid hitting a vehicle in the intersection. There was sufficient evidence that plaintiff approached the intersection at a speed which would not allow him to avoid the accident. Further, the heavy impact, amount of damage and injuries, and the force at which the cab was propelled into another car were factors which could be considered with the other circumstances in determining whether plaintiff's speed was excessive. There was sufficient evidence that plaintiff's excessive speed directly caused, or directly contributed to cause, the collision to submit this issue to the jury.

■ Plaintiff further argues that there was no evidence that he could have stopped in time to avoid the collision after he first saw the cab. Evidence that a motorist had

the time, distance, means or ability to avoid a collision by swerving or slackening speed is only required where failure to swerve or slacken speed is submitted. *See Knox,* 838 S.W.2d at 25. Where excessive speed is submitted, the evidence need only show that the motorist was driving at a speed which, under the circumstances, prevented the party from avoiding a collision. *Id.* at 24.

The trial court did not abuse its discretion in submitting the comparative fault instruction based on excessive speed.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.