

# Missouri Court of Appeals

### Southern District

### Division Two

SHAWN R. MITCHELL,                    )
                                      )
    Plaintiff-Appellant,              )
                                      )
vs.                                   )      No. SD33921
                                      )
LOREN KEITH WILSON and                )      **Filed:  April 21, 2016**
LOREN L. WILSON,                      )
                                      )
    Defendants-Respondents.           )

### APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Robert N. Mayer, Circuit Judge

**AFFIRMED**

Following an accident on April 17, 2007, in which a passenger car driven by Shawn R.

Mitchell ("Appellant") collided with an agricultural tractor driven by Loren L. Wilson

("Respondent"), Appellant filed suit against Respondent and others for the personal injuries

Appellant suffered in the accident.[1]  Appellant alleged that Respondent was negligent in his

operation of the tractor and that Respondent's negligence caused Appellant's injuries.  A trial to

---

[1] Appellant's wife also joined in the suit, but subsequently dismissed her claims without prejudice before trial.  The other defendants were Respondent's son, who employed Respondent at the time of the accident, and the son's wife. Appellant dismissed his claim against Respondent's daughter-in-law without prejudice before trial.

1

a jury occurred in March 2015.  The jury returned a verdict assessing 0% of fault to Respondent and 100% of fault to Appellant.

Appellant appeals from the judgment, and, in six points, claims the trial court erred in (1) denying his motion for a new trial on the ground the jury's verdict was against the weight of the evidence,[2] (2) admitting evidence of Appellant's prior convictions for impeachment, (3) instructing the jury on Respondent's contention that Appellant "drove at an excessive speed," (4) denying Appellant's motion for mistrial during Respondent's closing argument, and (5) denying his motion for a new trial because the trial court's errors identified in clauses (2) through (4) were cumulative and, considered as a whole, required a new trial.  Finding no merit in any of Appellant's points, we affirm the trial court's judgment.

## Facts and Procedural History

Viewed in accordance with our standards of review, the evidence at trial showed the following.

On April 17, 2007, about 1:00 p.m., Respondent was driving a large agricultural tractor on a gravel road.  The tractor had dual, rear wheels, and the width of the rear wheels "from one side to the other" was approximately ten feet six inches.  As Respondent approached the crest of a hill, he observed dust "fogging up" on the far side of the hill and believed a vehicle was approaching.  Respondent slowed down and "got over to the bank as far as [he] could." Respondent had a "bank" on his side of the road, and the other shoulder was "just grass." Respondent had his lights and flashers on.

When Respondent saw the vehicle, it was a car and Respondent "thought . . . he was coming awful fast."  The "next thing" Respondent knew, he "said oh, he is going to hit me."

---

[2] Appellant abandoned this claim at oral argument, and we do not address the claim further in this opinion.

2

Respondent "never heard" or "felt" the collision, and "was out after that." Respondent estimated the car was traveling "at least 50," and "was coming right up the middle of the road." Respondent believed Appellant had room to pass on Appellant's side of the road if Appellant had slowed down. Appellant was driving the car.

Corporal Richard Owens with the Missouri State Highway Patrol investigated the accident. The accident occurred on a "slight downgrade" with "braking skid marks" 176 feet in length. The road was 21 feet wide "at the point of the accident," and was gravel with "no designated center line." The "area of impact" was more on the tractor's side of the road. There was about ten feet of the road "open" on Appellant's side of the road. Two white headlights and amber, flashing lights "on top . . . were illuminated" on the tractor when Corporal Owens arrived at the accident scene. In the collision, the left, front end of Appellant's car struck the left, rear, dual wheels of the tractor. The impact caused the tractor to rotate in the road and the "left rear dual tires on the tractor" "to be knocked off the tractor," and the car "had extensive front end damage [with] the front left . . . pushed back in." There "really [is] no way of steering" when you are "on a gravel road and your brakes are locked up." Corporal Owens "believe[d] if [Appellant's] tires were not locked up, then [Appellant's car] possibly could have been driven on the right side or far enough over to clear both vehicles."[3] Both Appellant and Respondent were taken to the hospital after the accident.

---

[3] Corporal Owens prepared a diagram of the accident scene that was used by both parties and admitted into evidence by Respondent. Appellant introduced into evidence a photograph of Respondent's tractor and Appellant's car taken at the accident scene after the accident. The diagram and the photograph were viewed by the jury during the jury's deliberations, and, viewed together, appear to show that Appellant had room to pass Respondent on Appellant's right.

3

At the time of trial, Appellant had not paid any portion of his medical charges and, except for one medical provider who had obtained a judgment against Appellant, was not being sued or sent collection letters by his other medical providers.[4]

An exchange occurred on cross examination of Appellant concerning prior convictions:

[Respondent's counsel]: [Appellant], have you ever been convicted of a crime?

[Appellant]: Yes.

. . . .

[Respondent's counsel]: And you've been convicted of speeding a bunch of times; correct?

[Appellant's counsel]: Your Honor, I don't think that goes to the credibility of the witness. I'd object to any misdemeanors or speeding charges.

THE COURT: I'm going to overrule the objection and let him proceed.

[Respondent's counsel]: Bunch of speeding tickets; right?

[Appellant]: No.

[Respondent's counsel]: No?

[Appellant]: No, I haven't had a bunch of speeding tickets.

[Respondent's counsel]: Well, you had enough to get your license suspended a whole bunch of times; don't you?

[Appellant]: Driving on suspended. Get caught driving on suspended again, revoked them.

[Respondent's counsel]: You had -

[Appellant]: I still had to -

[Respondent's counsel]: - to have -

---

[4] Appellant's counsel did not object to Respondent's counsel's elicitation of this testimony from Appellant on cross examination.

[Appellant]: - get to work.

THE COURT: One at a time. Let him answer the question.

[Respondent's counsel]: Sure.

[Appellant]: They just kept adding up.

[Appellant's counsel]: Your Honor, I object. I think this is improper. It doesn't go to anything, it doesn't go to the truth or veracity of the witness. It doesn't go to what happened on that day. I'd ask that the -

[Respondent's counsel]: I don't have any further questions.

[Appellant's counsel]: - answer be stricken.

THE COURT: I'm going to overrule the objection. He's through with his line of questioning. Would you like to redirect?

[Appellant's counsel]: Yes, Your Honor.

Respondent requested Instruction No. 9. Instruction No. 9 provided:

In your verdict, you must assess a percentage of fault to Appellant if you believe:

First, either:

Appellant's automobile was on the wrong side of the road, or

Appellant drove at an excessive speed, and

Second, Appellant, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence of Appellant directly caused or directly contributed to cause any damage Appellant may have sustained.

Appellant objected to this instruction on the basis there was no evidence he "drove at an excessive speed."

*Points II and III – Impeachment of Appellant with His Prior Convictions*

5

In his second and third points, Appellant contends that the trial court abused its discretion in permitting Respondent to impeach Appellant with "prior crimes of speeding and driving while suspended" because the impeachment "included references to administrative proceedings and possible municipal convictions" and the impeachment's "tendency to prejudice or mislead the jury far outweighed its probative value." In order for Appellant to preserve for appellate review his objections to Respondent's impeachment with his convictions:

> there must have been an objection made at the time the evidence was sought to be introduced and then carried forward on appeal. *Rogers v. B.G. Transit Corp.*, 949 S.W.2d 151, 153 (Mo.App. S.D.1997). "Moreover, objections to evidence must be specific, must point out the grounds thereof, and are to be determined upon the grounds stated therein." *Id.* The scope of the objection may not be broadened or altered on appeal. *Id.* Parties are prevented from advancing an objection to evidence on appeal that is different from the one presented to the trial court. *Id.*

*Lester E. Cox Medical Centers v. Richards*, 252 S.W.3d 236, 239 (Mo.App. S.D. 2008). In addition:

> [a]n objection to evidence "must be 'sufficiently clear and definite' so that [ ] counsel has the opportunity to correct any error and the trial court can correctly rule on the objection." *Refrigeration Industries, Inc. v. Nemmers*, 880 S.W.2d 912, 919 (Mo.App. W.D.1994) quoting *Reed v. Director of Revenue*, 834 S.W.2d 834, 836–37 (Mo.App.E.D.1992).

*Id*. at 240. Appellant did not raise an objection that the probative value was outweighed by the tendency to prejudice the jury at trial and, as a result, did not preserve that objection for our review.[5]

As for Appellant's claim that the impeachment included references to administrative proceedings and possible municipal violations, there is no evidence before us to make that

---

[5] Appellant did not request us to review this point for plain error, and we decline to exercise our discretion to engage in plain error review. We note, however, that section 491.050 provides, in pertinent part, "any prior criminal convictions may be proved to affect his credibility in a civil or criminal case[.]" Further, misdemeanor convictions are admissible for impeachment purposes. *See* **In re Marriage of Daneshfar**, 953 S.W.2d 95, 102-103 (Mo.App. S.D. 1997).

determination. Respondent's counsel asked Appellant on cross examination "[w]hat crime or crimes [he had] been convicted of." When Respondent's counsel asked "you've been convicted of speeding a bunch of times," Appellant's counsel objected stating "I don't think that goes to the credibility of the witness. I'd object to any misdemeanors or speeding charges." The trial court overruled the objection, and Appellant denied he "had a bunch of speeding tickets," but admitted his license had been revoked on multiple occasions for driving on a suspended license. Appellant's counsel objected to a continuing conversation between Respondent's counsel and Appellant and stated, "I think this is improper. It doesn't go to anything, it doesn't go to the truth or veracity of the witness. It doesn't go to what happened on that day" and asked that the "answer be stricken." The trial court again overruled the objection, but Respondent's counsel stopped the questions.

Appellant's objections at trial did not include the grounds now urged before us that Appellant's convictions were municipal or administrative convictions. He provided no context for the trial court to believe that the questions were improper because Appellant's convictions were municipal or administrative convictions. His second objection was that the questions did not go to the truth or veracity. As a result, we cannot convict the trial court of error on that basis either.

Points II and III are denied.

*Point IV – Instruction on Affirmative Defense that Appellant Was Driving at an Excessive Speed*

In his fourth point, Appellant asserts that the trial court erred in submitting to the jury an instruction requested by Respondent that "hypothesized [Appellant] was driving at excessive speed" because the instruction was not supported by "substantial evidence." We reject this point.

7

The propriety of the instructions submitted to the jury is a question of law that is reviewed de novo. *Klotz v. St. Anthony's Medical Center*, 311 S.W.3d 752, 766 (Mo. banc 2010). "Review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper." *Id*. As such, a Respondent is entitled to an instruction on any theory that the evidence and the reasonable inferences therefrom tend to establish. *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). Further, instructional errors will be reversed only if the error resulted in prejudice that materially affected the merits of the action. *Klotz*, 311 S.W.3d at 766.

*Hopfer v. Neenah Foundry Company*, 477 S.W.3d 116, 123-24 (Mo.App. E.D. 2015). "An instruction must be supported by substantial evidence. Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can reasonably decide the case." *Braniecki v. Mound City Yellow Cab Company, Inc.*, 861 S.W.2d 683, 685 (Mo.App. E.D. 1993) (internal citation omitted).

An excessive speed instruction is proper where the record indicates that a party was driving at a speed which, under the circumstances, prevented the party from avoiding a collision. *Knox v. Simmons*, 838 S.W.2d 21, 24 (Mo.App.1992). The test is whether the speed prevented the driver from avoiding the accident. *Schneider v. Finley*, 553 S.W.2d 727, 730 (Mo.App.1977). . . . Evidence supporting an excessive speed instruction may be direct or circumstantial. *Schneider*, 553 S.W.2d at 731.

. . . .

Whether a particular speed is high, dangerous, or excessive depends on the conditions of the highway and surrounding circumstances. *Schneider*, 553 S.W.2d at 731; *Calvert*, 400 S.W.2d at 139. *See also Howland v. West*, 507 S.W.2d 345, 348 (Mo.1974).

*Braniecki*, 861 S.W.2d at 685; *see also Smith v. Missouri Highways and Transportation Commission*, 372 S.W.3d 90, 95 (Mo.App. S.D. 2012) (a finding of excessive speed is not precluded by the fact a vehicle was being driven within the speed limit). In addition:

"excessive speed may be proved by circumstances, and skidding, when combined with surrounding circumstances, may be sufficient to justify the inference of a high and dangerous rate of speed." [*Calvert v. Super Propane Corp.*, 400 S.W.2d

8

133, 139 (Mo.banc 1966)]; *see Dorrell v. Moore*, 504 S.W.2d 174 (Mo.App.1973) (holding that despite the fact that Respondent was driving within the posted speed limit, his speed was excessive for the conditions, which included heavy fog, and thus he breached his duty to use the highest degree of care in that his range of visibility was limited by the surrounding circumstances); *Hill v. Boling*, 523 S.W.2d 867 (Mo.App.1975) (stating that the resting place of the Respondent's vehicle is a factor which the jury can use to find excessive speed); *Calvert*, 400 S.W.2d at 141 (holding that a submissible case on excessive speed was made when the surrounding circumstances were that the road was icy and the Respondent's vehicle slid when he applied his brakes).

*Crane v. Drake*, 961 S.W.2d 897, 901-02 (Mo.App. W.D. 1998).

In this case, viewed in the light most favorable to the submission of the challenged instruction, substantial evidence indicated that Appellant, while driving on a gravel road, (1) approached the crest of a hill that he could not see beyond, (2) skidded 176 feet during which time he was unable to steer his vehicle because his brakes were applied, (3) struck a large agricultural tractor with sufficient force that the collision caused the tractor to rotate in the road and caused the two left, rear wheels of the tractor to be detached from the tractor, and (4) could have avoided the collision by moving to the right on the road. If believed, this evidence would have permitted a reasonable jury to find that Appellant was driving at an excessive speed for the conditions, and the excessive speed prevented Appellant from avoiding the collision. The trial court properly submitted the challenged instruction to the jury.

Appellant's fourth point is denied.

### Point V – Request for Mistrial in Closing Argument

In his original closing argument, Appellant's counsel asserted:

Now, [Respondent's counsel] can argue about the medical bills, well, it's been so long, is he going to pay them or not pay them. That doesn't matter. That's what the bills were. As a matter of fact, [Appellant's] even been sued on one of the bills and if you'll look at it, it shows the bill has been written off and he was still sued on it and got a judgment against him for the amount of bill. Those bills are

9

set [*sic*] out there. There's no evidence that those bills are not going -- or don't have to be paid.

Subsequently, in counsel for Respondent's closing argument, the following occurred. Respondent's counsel stated, "He's asking for compensation for medical bills that everybody in this courtroom knows he's never going to pay. The court sustained Appellant counsel's objection to the statement, but denied a mistrial.

In his fifth point, Appellant claims the trial court "abused its discretion when it overruled Appellant's [] motion for a mistrial" because Respondent's statement in closing argument that Appellant was asking to be compensated for medical bills "'that everybody in this courtroom knows he's never going to pay,'" "was not supported by the evidence and was highly prejudicial." We find no merit in this point.

> "A mistrial is a drastic remedy, granted only in extraordinary circumstances." *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 49 (Mo. banc 2006) (citation omitted). "The trial court's decision to sustain or overrule a motion for a mistrial . . . lies within its sound discretion." *In re Brasch*, 332 S.W.3d 115, 121 (Mo. banc 2011) (citing *Pierce v. Platte–Clay Elec. Coop., Inc.*, 769 S.W.2d 769, 778 (Mo. banc 1989)). "Absent a manifest abuse of discretion, an appellate court will not interfere with the trial court's decision." *Id.*

*Snellen v. Capital Region Medical Center*, 422 S.W.3d 343, 349 (Mo.App. W.D. 2013). An appellant must also show prejudice sufficient to require a mistrial rather than other less drastic remedies. *State v. Stewart*, 296 S.W.3d 5, 12-13 (Mo.App. S.D. 2009).

This point fails because the jury's assessment of zero percent fault to Respondent rendered any claimed error in determining Appellant's damages nonprejudicial. Appellant failed to persuade the jury that Respondent should be assessed any fault in the collision. As a result, any error in closing argument with respect to Appellant's damages could not have prejudiced Appellant. Respondent's statement in his closing argument did not constitute "extraordinary

10

circumstances" that required the drastic remedy of a mistrial in addition to the remedy granted by the trial court, and the trial court's denial of Appellant's request for a mistrial was not a "manifest abuse of discretion."

Appellant's fifth point is denied.

*Point VI – Cumulative Error*

In his sixth and last point, Appellant contends that the alleged errors asserted in points II through V were "cumulative" and required a new trial when considered as a whole. As Appellant notes in his brief:

> "[A] new trial can be ordered due to cumulative error, even without deciding whether any single point would constitute grounds for reversal." *DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 536 (Mo.App. E.D.1991). However, "[a]ny number of non-errors cannot add up to an error." *Shepherd v. State*, 529 S.W.2d 943, 948 (Mo.App.1975).

***Delacroix v. Doncasters, Inc.***, 407 S.W.3d 13, 39 (Mo.App. E.D. banc 2013). In light of the fact that we do not find any error in Appellant's points II through V, there are no errors for us to review cumulatively.

Appellant's sixth point is denied.

The trial court's judgment is affirmed.


Nancy Steffen Rahmeyer, J. - Opinion Author

Gary W. Lynch, J. - Concurs

William W. Francis, Jr., J. - Concurs

11