Lorna BOTTGER, Plaintiff/Respondent,

v.

Charles CHEEK, M.D.,
Defendant/Appellant.

No. 58120.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 30, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1991.

Application to Transfer Denied
Oct. 16, 1991.

William Davis, Christina Rush, Laurie Scully, St. Louis, for defendant/appellant.

Michael Stokes, Christiana Ann Gilsinan, St. Louis, for plaintiff/respondent.

CARL R. GAERTNER, Judge.

Defendant appeals from an adverse judgment in a medical malpractice case. A jury verdict awarded eight hundred thousand dollars in damages for negligent treatment of plaintiff following cataract surgery, resulting ultimately in the surgical removal of her left eye. We reverse and remand.

In 1984, plaintiff Lorna Bottger was informed by her optometrist that she had cataracts and he referred her to defendant Dr. Cheek, an ophthalmic surgeon. On October 29, 1984 plaintiff had an appointment with Dr. Cheek during which he confirmed the diagnosis of cataracts and informed her that surgery was necessary. November 1, 1984 Dr. Cheek performed a cataract extraction and implantation of an intraocular lens at Columbia Regional Hospital in Boone County, Missouri. Plaintiff was discharged the following day, November 2, after being examined by the doctor and given an instruction sheet and some eye

drops. Plaintiff's first scheduled "follow-up" visit was set for the following Monday, November 12, 1984 at Dr. Cheek's office in Columbia.

Plaintiff did not experience any problems with her eye for a couple of days following the surgery. On November 4, however, she began to have problems stating "it felt like something in my eye." The parties' testimony is controverted as to what conversations transpired between the patient and the doctor between November 5th and November 10th regarding complaints of pain, if any, and recommended treatment.

On Friday night, November 9, 1984, plaintiff testified she began to experience tremendous pain in her eye. A little after 2:00 a.m., Saturday, November 10, after trying to relieve the pain, plaintiff called Dr. Cheek's office. She reached a recorded message instructing her to call a different number, which she did and reached Dr. Leo Landhuis. After hearing plaintiff's complaints, Dr. Landhuis instructed her to go directly to the emergency room at Columbia Regional Hospital. Upon examining plaintiff in the emergency room, Dr. Landhuis admitted her to the hospital. He removed some fluid from the inflamed eye and, upon determining the eye was infected, treated her with antibiotics over the weekend.

Dr. Landhuis notified Dr. Cheek on Monday, November 12, for the first time, that he had admitted plaintiff to the hospital over the weekend. At the same time, he told Dr. Cheek of the problem of infection with the patient's eye. Immediately thereafter, Dr. Cheek sent for plaintiff to come to his office and, upon examining his patient, Dr. Cheek decided to transfer her to Barnes Hospital in St. Louis for further treatment.

Plaintiff was taken to Barnes by ambulance and arrived at approximately 3:45 p.m. that afternoon, November 12. The emergency surgery and procedures, however, were not performed until 9:00 p.m. Experts testified that time is a critical factor in treating these kinds of infections of the eye. There was conflicting evidence presented at trial as to whether Dr. Cheek called Barnes to notify it of plaintiff's impending arrival. Dr. Cheek claims he telephoned. However, plaintiff's attorney presented the telephone records from defendant's office from November 12 which reflect an absence of a record of a call to Barnes Hospital.

Four surgical procedures were performed at Barnes Hospital in a last gasp effort to save plaintiff's eye, but all were ultimately unsuccessful. In August, 1985, plaintiff's left eye was removed by a doctor in Quincy, Illinois and she now has a glass prosthesis.

Dr. Cheek raises three points on appeal. First, the judgment in favor of plaintiff should be declared void because venue was improper in the City of St. Louis. Second, the judgment entered against him was based upon a verdict director, Instruction Number 7, which was prejudicially erroneous. And third, he was prejudiced when, in closing argument, the trial court allowed plaintiff's counsel to inject the unpleaded issue of punitive damages into the case.

## I. VENUE

Plaintiff filed her original cause of action on May 13, 1986, in the Circuit Court of the City of St. Louis for medical malpractice. She named as defendants: Charles M. Cheek, M.D., Lifemark Hospitals, Inc. d/b/a Columbia Regional Hospital, and Barnes Hospital, Inc. On April 28, 1988 and March 31, 1988, plaintiff voluntarily dismissed defendants Lifemark and Barnes Hospitals without prejudice. Thereafter, on May 18, 1989, plaintiff filed an amended petition in the Circuit Court of the City of St. Louis naming only Dr. Cheek and Columbia Eye Consultants Optometry, Inc.,[1] as defendants.

Dr. Cheek argues in his first point on appeal that the judgment of November 16, 1989, in favor of plaintiff should be declared void because the Circuit Court of the City of St. Louis was without jurisdiction

1. Whether Columbia Eye Consultants Optometry, Inc., was properly joined as a defendant in this amended petition is not an issue as it was dismissed without prejudice on June 8, 1989.

as no defendant in plaintiff's amended petition was a resident of the City of St. Louis and the alleged act of negligence did not occur in St. Louis. Further, he contends that even if plaintiff's original petition is used to determine venue, venue was still not proper in the City of St. Louis because the joinder of Barnes Hospital, the only St. Louis resident defendant in the original petition, was fraudulent and pretensive.

■ Before addressing defendant's argument regarding pretensive joinder, we note the original petition, naming several defendants, one of which was a resident of the City of St. Louis, comports with the provision of § 508.010(2) RSMo.1986, establishing venue in any county in which one of several defendants resides. Assuming venue was properly vested in the first instance, the subsequent dismissal of the resident defendant does not divest the court in which the action was filed of venue and jurisdiction over the person of the remaining non-resident defendant. *Rakestraw v. Norris*, 478 S.W.2d 409, 414–15 (Mo.App. 1972).

■ The criteria by which a claim of pretensive joinder must be tested are set forth in *Rakestraw*. The petition must allege facts showing the plaintiff is entitled to recover against the resident defendant. It is not sufficient that the petition state a "paper case" against the resident defendant if it nevertheless appears from the record, pleadings, and facts presented in support of a motion which raises the issue of pretensive joinder that the resident defendant cannot be held liable on any reasonable ground and that the plaintiff must be presumed to have known this at the time the petition was filed. All that is necessary is that under the law and the evidence it appear that plaintiff is entitled to an honest belief a justiciable claim exists against the resident defendant. *Rakestraw*, 478 S.W.2d at 414.

■ Defendant does not dispute the fact the petition, which alleges Barnes Hospital failed to render timely and adequate treatment, on its face states a cause of action. However, defendant strenuously argues that there is no factual basis to support the contention of an honest belief a justiciable claim existed against Barnes Hospital. The defendant's motion to dismiss was first presented to the assignment judge and overruled. After the case was assigned, the motion was reargued before the trial judge. At that time plaintiff's attorney stated on the record that at the time the petition was filed, based upon the information he had been given, he believed a case could be made against Barnes Hospital. He had been informed that Dr. Cheek telephoned physicians at Barnes to alert them plaintiff was coming and that she required immediate attention. However, she was required to wait almost six hours before anyone at the hospital attended her. An expert advised counsel immediate treatment was critical because of the nature of the infectious process. Minutes and hours often make a difference between recovery and loss of sight. By affidavit filed in response to defendant's motion for new trial, plaintiff's attorney augmented his pre-trial statement. Through discovery he obtained the telephone records of Dr. Cheek's office. No telephone call to Barnes Hospital was recorded on the date of plaintiff's transfer. The records did show a call to the hospital two days later which involved a different patient with a similar condition whose sight was saved. Plaintiff's attorney dismissed the case as to Barnes Hospital after these facts were discovered.

■ If the statement and the post-trial affidavit of plaintiff's attorney are to be taken into account, it is obvious that the trial court did not abuse its discretion in finding the existence of honest belief a case could be made against Barnes Hospital. Defendant, however, asserts a procedural challenge and argues that a plaintiff should not be deemed to have sustained the burden of proving an honest belief by unsubstantiated, self-serving statements, and post-trial affidavits. Defendant would have us analogize procedure attendant to a motion to dismiss for pretensive joinder to the procedural requirement of a summary judgment motion, where a party may not rest upon the pleadings, but must come

forward with affidavits or other evidence to support his position when the motion is presented. The manner of hearing pre-trial motions is governed by Rule 55.28 which vests the trial court with discretion to accept affidavits or to require oral testimony or depositions regarding facts not appearing of record. Accordingly, we reject defendant's argument that the presentation of affidavits or other evidence is mandatory. Nevertheless, consideration of the procedural aspects of a motion alleging pretensive joinder is warranted.

■ First of all, we note the anomalous situation in which some decisions place the burden of proof regarding the honest belief of a justiciable claim upon the plaintiff and others upon the defendant. *Goff v. Schlegel*, 748 S.W.2d 813, 817 (Mo.App.1988), *Birdsong v. Adolf*, 724 S.W.2d 731, 733 (Mo.App.1987), and *Polk County Bank v. Spitz*, 690 S.W.2d 192, 194 (Mo.App.1985) are examples of the former position. Although these cases cite Rakestraw v. Norris, supra, as authority for the proposition that plaintiff has the burden of proof on the issue, *Rakestraw*, clearly holds the "movant carries the burden of persuasion and the burden of proof...." 478 S.W.2d at 414. Even more inexplicable are the two decisions of this court in one case, *Wadlow v. Donald Linder Homes, Inc.*, 654 S.W.2d 644 (Mo.App.1983) [*Wadlow I*] and 722 S.W.2d 621 (Mo.App.1986) [*Wadlow II*]. At issue in both decisions was a contention by a non-resident defendant of fraudulent joinder of a defendant who resided in the county where the suit was filed. *Wadlow I* states: "plaintiffs carry the burden of proof to show an honest belief that there is a justiciable claim against the resident party." 654 S.W.2d at 646. *Wadlow II*, however, asserts: "the burden is upon [non-resident defendant] to support the allegations of fraudulent joinder." 722 S.W.2d at 624–25. The most recent pronouncement of the Supreme Court would appear to be *Glick v. Ballentine Produce, Inc.*, 396 S.W.2d 609, 612 (Mo.1965) which imposes the burden of proof upon the party moving for dismissal on the basis of fraudulent joinder.

Not only are we constrained to follow the latest controlling decision of the Supreme Court on the subject, but we also believe placing the burden of proof upon the moving party is more logical and consistent with customary practice. Assuming the facts alleged in plaintiff's petition are sufficient to state a claim showing plaintiff entitled to recover against the resident defendant, the burden rests upon the non-resident defendant moving for dismissal to show the alleged facts are not true and cannot be proven. This may be accomplished through testimony, affidavits, depositions, interrogatories, requests for admissions, or other evidence. Plaintiff may counter such proof by coming forward with evidence demonstrating that, at the time the action was commenced, he had reason to believe the facts alleged against the resident defendant were true and capable of proof at trial. The fact this belief is subsequently discovered to be erroneous is irrelevant provided the information available at the time of filing was such as to give rise to a reasonable legal opinion that a submissible case could be made against the resident defendant. Thus, despite the subjective connotation of the term "honest belief" the standard is an objective one, perhaps more appropriately denominated as a "realistic belief" that under the law and the evidence a justiciable claim exists. As stated above, we agree with the trial court that the information furnished to plaintiff's counsel at the time the original action was filed was sufficient to meet this objective standard.

■ We also reject defendant's argument that the post-trial affidavit of plaintiff's attorney should not be considered. Granted, it would be better practice to have presented the affidavit in response to the motion to dismiss at the earliest instance prior to the time that the motion was first submitted. Had the matter come before us at that time on an application for an extraordinary writ, with no record having been made before the trial court, the result may well have been different. However, as in the cases cited above which address the issue of pretensive joinder, we consider the record which was presented to the trial

court and to us in its entirety. The facts stated at the pre-trial motion hearing by counsel as an officer of the court and those set forth in his post-trial affidavit stand unrefuted and were accepted by the trial court. We defer to the trial court in matters of credibility.

## II. INSTRUCTIONAL ERROR

Defendant maintains that the judgment must be reversed because the verdict director, Instruction No. 7, was prejudicially erroneous in three respects: (1) It allowed the jury to find for plaintiff based on an agency theory when no submissible case of agency was established; (2) It assumed as true certain key controverted facts rather than submitting them to the jury for determination; and (3) It was confusing and misleading, intermingling inconsistent guides for recovery and it impermissibly gave the jury "roving commission" to find liability. We examine Instruction No. 7 in light of appellant's criticisms recognizing whether the verdict director was prejudicially erroneous is a question of law. *Hanten v. Jacobs*, 684 S.W.2d 433, 436 (Mo.App.1984).

Instruction No. 7 reads:

In your verdict you must assess a percentage of fault to defendant Charles Cheek if you believe:

First, Leo Landhuis was an agent of Charles Cheek and was rendering medical treatment within the course and scope of his agency for Charles Cheek, and

Second, Leo Landhuis either: failed to perform a vitrectomy with intravitreal injection, or

failed to refer Lorna Bottger to a retinal specialist for a vitrectomy and intravitreal injection of antibiotics in a timely manner, or

· defendant Charles Cheek failed to use a slit lamp or opthalmascope to examine Lorna Bottger's left eye 24 hours after her cataract surgery, or

defendant Charles Cheek failed to perform a second examination of Lorna Bottger's left eye within seven (7) days following her cataract surgery, or

defendant Charles Cheek failed to examine Lorna Bottger's left eye following complaints of foreign body sensation on November 5, 1984 and November 9, 1984, or

defendant Charles Cheek failed to refer Lorna Bottger to a retinal specialist for a vitrectomy and intravitreal injection of antibiotics in a timely manner, and

Third, Leo Landuis or defendant Charles Cheek, in any one or more of the respects submitted in paragraph Second, was thereby negligent, and

Fourth, such negligence directly caused or directly contributed to cause damage to plaintiff.

"Scope and course of agency" was defined in Instruction No. 6 as follows:

Acts were within the "scope and course of agency" as that phrase is used in these instructions if:

1. they were performed by Leo Landhuis to serve the interests of Defendant Charles Cheek according to an express or implied agreement with Defendant Charles Cheek, and

2. Defendant Charles Cheek either controlled or had the right to control the physical conduct of Leo Landhuis.

■ The determination of whether there exists competent evidence which reasonably tends to prove the existence of an agency relationship is a question of law. *Tri City Construction Co. v. A.C. Kirkwood & Associates*, 738 S.W.2d 925, 931 (Mo.App.1987). The record, viewed in the light most favorable to the party offering the instruction, must disclose the instruction is supported by sufficient evidence. *Miller v. Eaton*, 733 S.W.2d 31, 33 (Mo.App.1987).

■ The record in this case is devoid of any evidence of an agency relationship between defendant and Dr. Landhuis. The facts that the doctors shared office space and certain expenses and, with two other doctors, rotated being "on call" on weekends for emergency calls from each other's patients fail to demonstrate any control or right of control by the defendant over the professional conduct of Dr. Landhuis.

The recent decision of the Supreme Court in *Goff v. St. Luke's Hosp. of Kansas City,* 753 S.W.2d 557 (Mo. banc 1988) is dispositive. In *Goff,* a patient was admitted to a hospital by Dr. Crouch who then left on vacation. The patient was then attended in the hospital by Dr. Sharma. The two physicians office together and were both employees and shareholders of the same professional corporation. In a medical malpractice action after the patient's death, his widow submitted her case against Dr. Crouch based upon the negligence of Dr. Sharma. The jury instructions included a definition of "scope and course of agency" in language identical to that used in Instruction 7 in this case. The Supreme Court reversed the judgment against Dr. Crouch. Noting that Dr. Crouch left no orders or directions for Dr. Sharma, even though they shared responsibility for the care and treatment of the patient, the evidence failed to show that Dr. Crouch controlled or had the right to control Sharma in the performance of his professional duties.

Similarly, in this case defendant gave no orders or directions to Dr. Landhuis. Defendant was not even aware that plaintiff had contacted Dr. Landhuis on Saturday until Monday morning, at which time defendant resumed personal control of plaintiff's treatment. He exercised no control over Dr. Landhuis' treatment of plaintiff over the weekend and there is no evidence that defendant had any right to do so. Accordingly, it was prejudicially erroneous to instruct the jury that defendant could be held liable on account of any negligent treatment given by Dr. Landhuis.

We need not address the other allegations of error regarding Instruction 7. On retrial, in formulating instructions the parties may find guidance in the arguments briefed herein.

The judgment is reversed and the cause is remanded for a new trial.

SMITH, P.J., and SATZ, J., concur.