### STATE ex rel. Kevin C. SHELTON, Relator,

v.

### Honorable Thomas C. MUMMERT, Judge, Circuit Court, City of St. Louis, Respondent.

No. 76353.

Supreme Court of Missouri, En Banc.

June 21, 1994.

Rehearing Denied Aug. 15, 1994.

Theodore G. Pashos, St. Louis, for relator.

Paul C. Hetterman, St. Louis, for respondent.

THOMAS, Judge.

Relator Kevin Shelton filed a petition for a writ of prohibition arguing that venue was not proper in the City of St. Louis. The Court of Appeals, Eastern District, held that plaintiffs' joinder of their underinsured motorist carrier was pretensive. The court of appeals, therefore, issued a writ of prohibition and ordered that the case be transferred to Miller County. We quash the preliminary writ of prohibition and order that a writ of mandamus issue directing the case be transferred to Miller County.

## FACTS

On July 7, 1992, Drucilla Nugent and Kevin Shelton were involved in an automobile accident. In October 1992, Drucilla and Jack Nugent filed a three count petition against Shelton and American Family Insurance Company in the City of St. Louis. In Count I, Drucilla Nugent alleges that Shelton negligently operated his vehicle, and she seeks damages from Shelton. In Counts II and III, the Nugents assert claims against American Family pursuant to the underinsured motorist provision in their policy.[1] Venue is premised on the fact that American Family has an office in the City of St. Louis. The accident occurred in Miller County where Defendant Shelton is a resident. Plaintiffs are residents of Morgan County.

American Family filed a motion to dismiss. It claimed that the Nugents failed to state a cause of action against American Family, or, in the alternative, it was premature under the terms of its policy. Shelton filed a motion to transfer venue to Miller County. He argued that venue in the City of St. Louis is pretensive because American Family was joined as a defendant solely for the purpose of obtaining venue.

The trial court granted American Family's motion to dismiss but denied Shelton's motion to transfer venue. Shelton filed a mo-

---

1. American Family's underinsured motorist coverage under this policy is separate and distinct from the uninsured motorist coverage, which involves different issues. *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713 (Mo. banc 1979).

tion for rehearing, which was denied. Shelton then filed a petition for a writ of prohibition seeking to prevent Respondent Mummert from proceeding in the action on the ground that venue was improper. The court of appeals held that the joinder of American Family by the Nugents was pretensive and that venue in the City of St. Louis was improper as to Shelton. The court, therefore, made its preliminary writ of prohibition absolute and ordered the cause of action transferred to Miller County.

## PRETENSIVE JOINDER

The primary issue to be decided is whether the Nugents stated a present cause of action against American Family. If the Nugents failed to state a present cause of action against American Family, then venue in the City of St. Louis is improper as to Shelton if the joinder of American Family was pretensive. *See State ex rel. Coca Cola v. Gaertner,* 681 S.W.2d 445, 447 (Mo. banc 1984). In *State ex rel. Toastmaster v. Mummert,* 857 S.W.2d 869, 870–71 (Mo.App.1993), the court of appeals, citing this Court's opinion in *Coca Cola,* 681 S.W.2d at 447, correctly set forth the test for pretensive joinder:

Venue is pretensive if (1) the petition on its face fails to state a cause of action against the resident defendant; or (2) the petition does state a cause of action against the resident defendant, but the record, pleadings and facts presented in support of a motion asserting pretensive joinder establish that there is, in fact, no cause of action against the resident defendant and that the information available at the time the petition was filed would not support a reasonable legal opinion that a case could be made against the resident defendant. *State ex rel. Hoeft,* 825 S.W.2d 65, 66 (Mo.App.1992); *Bottger v. Cheek,* 815 S.W.2d 76, 79 (Mo.App.1991). The standard is an objective one, appropriately denominated as a realistic belief that under the law and the evidence a [valid] claim exists. *Id.*

The Nugents neither (1) pleaded the specific terms of American Family's underinsured motorist provision, or (2) incorporated by reference and attached the terms of the underinsured motorist provision to their peti-

tion. Therefore, this case must be analyzed under the second test set forth in *Toastmaster* because we are required to look beyond the pleading to determine whether joinder is pretensive.

In analyzing this case under the second test, Shelton contends that the information available to the Nugents at the time they filed their petition did not support a reasonable legal opinion that a present cause of action existed against American Family. *Coca Cola,* 681 S.W.2d at 447–48; *Toastmaster* 857 S.W.2d at 871; *Bottger,* 815 S.W.2d at 80. Specifically, Shelton argues that the Nugents' insurance policy and the court of appeals' opinion in *State ex rel. Sago v. O'Brien,* 827 S.W.2d 754 (Mo.App.1992), require that an insured exhaust all applicable policy limits by settlement or obtain a judgment in excess of all applicable liability coverage before American Family is liable under their underinsured motorist provision. Shelton is correct.

█ The American Family policy issued to the Nugents contained the following language in the underinsured motorist provision:

We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the underinsured motor vehicle.

You must notify us of any suit brought to determine legal liability or damages. Without our written consent we are not bound by any resulting judgment.

We will pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

This latter paragraph in the Nugents' policy requires that all liability coverage be exhausted by judgments or settlements before American Family is liable under its underinsured motorist provision. Thus, under the language in the Nugents' policy, they did not have a present cause of action against Ameri-

**528**

can Family because there was no settlement or judgment against Shelton in the underlying action.

■ This is consistent with the interpretation of a similar underinsured provision in *Sago,* 827 S.W.2d 754, which was decided approximately seven months prior to when the Nugents' filed their lawsuit. The policy in *Sago* had a provision that stated: "There is no coverage until the limits of liability of all bodily injury or liability bonds and policies that apply have been used up by payment of judgment or settlement." *Id.* at 755. The court of appeals concluded that the insured must meet the following three conditions before the underinsured motorist carrier is required to pay damages: (1) the insured incurred bodily injuries, (2) the injuries occurred as a result of an accident with an underinsured motorist, and (3) the insured is "legally entitled" to collect from the owner of the underinsured vehicle. *Id.* *Sago* implicitly includes a fourth requirement, which arises from the policy's language, that the limits of all applicable policies be exhausted by payment or settlement before liability exists under the terms of an underinsured motorist provision.[2] *Id.* In the absence of a settlement, the *Sago* court concluded that "[t]hese conditions can only be met if there is a prior determination of damages and these damages exceed the limits of the existing liability coverages." *Id.* A plaintiff does not have a viable cause of action against the underinsured motorist carrier until these requirements are satisfied.

### NUGENTS' POLICY ARGUMENTS FOR JOINDER

■ The Nugents, however, suggest that this Court should not follow the holding in *Sago* and its progeny because it is contrary to the public policy of Missouri. Specifically, the Nugents argue that by not permitting the joinder of underinsured motorist carriers in these types of lawsuits, we are (1) requiring multiple lawsuits, (2) discouraging settlements, (3) requiring discovery to be duplicated, and (4) hindering the resolution of claims. It should be noted, however, that unambiguous insurance policies will be enforced as written absent a contrary public policy consideration or statute. *Rodriguez v. General Acc. Ins. Co.,* 808 S.W.2d 379, 382 (Mo. banc 1991).

### A. Multiple Lawsuits

■ First, the Nugents argue that not allowing them to join American Family in the underlying suit "would give rise to the multiplicity of suits envisioned by the court in *State v. Craig,* 364 S.W.2d 343 (Mo.App. 1963)." The Nugents are concerned that even if they obtained a judgment against the tort-feasor, they still will be required to retry the issues of liability and damages against their underinsured motorist carrier. This is not a problem because of the principle of estoppel. *See Wells v. Hartford Accident and Indemnity Co.,* 459 S.W.2d 253, 259 (Mo. banc 1970); *Sago,* 827 S.W.2d at 756. In *Wells,* this Court held that an uninsured motorist carrier was estopped from relitigating issues necessarily decided in an action brought by its insured against an uninsured motorist if the carrier had been given notice and an opportunity to intervene and defend. Although *Wells* involved an uninsured motorist provision, its rationale holds equally true in an underinsured motorist case. *Sago,* 827 S.W.2d at 756. The Nugents can give American Family notice of the litigation and afford it an opportunity to intervene and defend. This concept is sometimes referred to as "vouching in." If notice is given and American Family chooses not to intervene, it will be bound by the resulting judgment as to liability and damages. This alleviates any concern regarding multiplicity of lawsuits.

### B. Settlements

■ The Nugents also argue that they should be permitted to join American Family in the underlying action to promote a settlement with American Family. However, an underinsured motorist carrier's motive for

**2.** It is not necessary in this case to decide whether the policy provision that requires actual payment, as opposed to merely obtaining a judgment in excess of all applicable policy limits, is an enforceable condition precedent to establishing liability under the terms of the underinsured motorist provision.

settlement is the same whether or not it is a party to the underlying action. If the carrier believes that the plaintiff is "legally entitled" to recover and that damages will be in excess of the defendant's liability coverage, then the underinsured motorist carrier will consider settlement as an option to minimize its potential liability. While it is true that if the underinsured motorist carrier follows a short-sighted policy of settling only when it is on the courthouse steps, not allowing it to be joined as a party in the underlying action may falsely deter the carrier from seriously considering settlement at this stage. However, the carrier's potential liability is the same regardless of whether it is a party to the underlying action, and the insurer has an obligation to act in good faith toward its own insured with regard to any settlement offer. *See Shafer v. Auto. Club Inter–Ins. Exchange*, 778 S.W.2d 395 (Mo.App.1989). If the underinsured carrier is realistic in its evaluation of a claim, not being a party to the underlying action should not be a factor in settlement. Plus, this is not reason enough to rewrite an insurance contract to join a party whose liability has not matured based on the language in the contract.

The Nugents also claim that the provisions relating to settlement in American Family's policy inhibit their ability to settle with the tort-feasor. The Nugents allege the policy provides that they cannot (1) settle for less than the full amount of the tort-feasor's policy and still recover under their underinsured motorist provision, or (2) settle without the consent of American Family. This argument at least implicitly asks us to determine the enforceability of contractual provisions that are not at issue in this case. We are unwilling to consider these issues at this time.

## C. Discovery

The Nugents also contend that if the underlying lawsuit is settled, they will be required to duplicate all of the discovery when suing American Family. They argue that American Family will not be bound by any of the previous discovery because it was not a party to the underlying lawsuit. The scenario painted by the Nugents assumes that the settlement agreement is reached on the courthouse steps after all discovery has been completed. This is a limited situation that does not justify adding a party whose liability has not matured.

In the final analysis, discovery may need to be repeated in some suits against underinsured motorist carriers. But we are unwilling to rewrite a contractual provision based on this fact. It would be far more egregious to force insurance companies to defend lawsuits where their liability has not matured than to require plaintiffs to occasionally duplicate discovery efforts. Moreover, if the insurer is "vouched in" so as to be bound by the underlying judgment, it would be a lesser step to conclude that it is bound by any discovery in which it could have participated. As with the previous issue, however, this issue is not before us today, and we decline to consider it at this time.

## D. Expeditious Resolution of Claims

Next, the Nugents contend that American Family should be joined so that their claims can be resolved expeditiously. They argue that if we do not allow underinsured motorist carriers to be sued until the underlying lawsuit has been resolved in excess of all policy limits, lawsuits against underinsured motorist carriers will not be filed until years after the accident occurred. This is a choice that the insurance companies make when they draft their underinsured motorist provisions. If the carrier is concerned about delays, it may intervene in the underlying lawsuit. But we are unwilling to allow all plaintiffs with underinsured motorist coverage to join their carrier in the underlying action so that a few legitimate but premature claims can be resolved more expediently. Such an interpretation would require us to rewrite insurance contracts and would be an unfair burden on an underinsured motorist carrier whose liability has not matured.

## *CONCLUSION*

We conclude that the Nugents failed to state a sufficient public policy argument to permit the joinder of American Family in the underlying action. Because there are no overriding public policy concerns, the Nugents' insurance policy will be enforced as

written. *Rodriguez,* 808 S.W.2d at 382. Furthermore, we agree with the court of appeals' holding in *Sago,* which requires that the Nugents exhaust all applicable policy limits by settlement or obtain a judgment in excess of all applicable liability coverage before American Family is liable under its underinsured motorist provision.

■ Under the language of the Nugents' insurance policy and the court of appeals' opinion in *Sago,* which was decided approximately seven months prior to the filing of this lawsuit, the Nugents did not have a present cause of action against American Family. We conclude, therefore, that the joinder of American Family was pretensive because this information was available to the Nugents at the time they filed their lawsuit and did not support a reasonable legal opinion that a valid cause of action existed against American Family. *Toastmaster,* 857 S.W.2d 869; *Bottger,* 815 S.W.2d at 80. Thus, venue in the City of St. Louis is improper as to Shelton. Venue is only proper in Miller County, which is where Defendant Shelton resides and where the accident occurred. *§ 508.010(2) and (6), RSMo 1986.*

Because section 476.410, RSMo Supp.1993, makes transferring of a case a ministerial act when venue is improper, we quash the preliminary writ of prohibition and order that a writ of mandamus be issued directing Judge Mummert to transfer the case to Miller County.

All concur.